IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 1130 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| CITY OF CHICAGO, CARL ) | |
| SUCHOCKI, TIM MCDERMOTT, ) | |
| JOHN BURZINSKI, and UNKNOWN ) | |
| CHICAGO POLICE OFFICERS, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Terrance Thompson ("Thompson") has filed a twelve-count complaint against Chicago police officers Carl Suchocki, Tim McDermott, John Burzinski and other unknown officers, and the City of Chicago pursuant to 42 U.S.C. §§ 1983 and 1985 for their alleged violations of his constitutional rights, their alleged conspiracy to deprive him of those rights, and their alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and Illinois tort law. Suchocki, McDermott, Burzinski and the City have filed motions to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants in part and denies in part both motions.

### Background

On September 21, 2002, Thompson was standing in front of his home when the defendant officers pulled up. (Compl. ¶¶ 6-7.) When the officers appeared, the people

standing near Thompson fled. (*Id.* ¶ 8.) After frisking Thompson, the officers asked him where the bystanders had gone. (*Id.* ¶¶ 9-12.) When Thompson said he did not know, the officers planted a gun on him, arrested him and charged him with aggravated unlawful use of a weapon. (*Id.* ¶¶ 11-13.)

During the ensuing investigation, the officers fabricated evidence that inculpated Thompson and withheld evidence that exculpated him. (*Id.* ¶ 14.) Moreover, in October 2003, when Thompson was tried, defendants testified falsely against him. (*Id.* ¶¶ 15-16.) On November 4, 2003, Thompson was convicted and sentenced to eight years in prison. (*Id.* ¶ 17.)

On March 31, 2005, the Illinois Appellate Court reversed Thompson's conviction and remanded the case for a new trial. (Officers' Mot. Dismiss, Ex. A, *People v. Pearson*, No. 1-03-3550 (Ill. App. Ct. Mar. 31, 2005) at 22.)[1]

On December 5, 2006, after Thompson had been in prison for more than three years, the State dismissed the charges against him. (Compl. ¶ 18.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but plaintiff must make sufficient "[f]actual allegations . . . to raise [his] right to relief above

---

[1] The Court can take judicial notice of the state court order without converting this motion into one for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (quotation omitted).

**Federal Claims**

The officers[2] say that the RICO claim asserted in Count I must be dismissed because plaintiff does not have statutory standing to pursue it. According to the statute, plaintiff can sue only if he was "injured in his business or property by reason" of defendants' "conduct or participat[ion], directly or indirectly, in the conduct of [the] affairs [of an enterprise that affects interstate commerce] through a pattern of racketeering activity." 18 U.S.C. §§ 1962(c),[3] 1964(c); *see Evans v. City of Chi.*, 434 F.3d 916, 925 (7th Cir. 2006) (noting that the "injury to business or property" requirement acts as a limitation on liability). Personal injuries or pecuniary losses flowing from them are not "injuries to business or property" sufficient to confer standing for a civil RICO claim. *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992).

Plaintiff alleges that, as a result of the officers' "racketeering activities," he was wrongly imprisoned for more than three years, causing him to lose property and wages and incur attorney's fees. (Compl. ¶¶ 17-19.) The Seventh Circuit has held that monetary losses of this sort are derivative of personal injuries, and thus, do not confer standing under § 1964(c). *Evans*, 434 F.3d at 931 ("[P]ecuniary losses stemming from

---

[2]Plaintiff does not assert a RICO claim against the City.

[3]Plaintiff does not identify the specific RICO provision defendants allegedly violated, but his allegations only support a claim under 18 U.S.C. § 1962(c). *See id.* § 1962(a) (prohibiting the use of income derived from a pattern of racketeering to acquire an interest in, establish or operate an enterprise that is engaged in or affects foreign or interstate commerce); *id.* § 1962(b) (prohibiting the acquisition or maintenance of any interest in or control of an enterprise that is engaged in or affects interstate or foreign commerce through a pattern of racketeering).

3

the inability to seek or gain employment due to . . . false imprisonment [and] pecuniary losses [that] emanate from a personal injury such as the acquisition of attorney fees due to alleged malicious prosecution or false imprisonment do not provide a plaintiff with standing under the civil RICO statute"). The officers' motion to dismiss the RICO claim is, therefore, granted.

Defendants also argue that the 42 U.S.C. §§ ("section") 1983 and 1985 claims against the officers in Counts II-VII for violating, and conspiring to violate, plaintiff's constitutional rights, as well the Count VIII *Monell* claim against the City that is based on those alleged constitutional violations, must be dismissed because they were filed after the applicable limitations period expired. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 n.2 (7th Cir. 1995) (stating that section 1985 claim arising in Illinois is governed by the State's two-year statute of limitations for personal injury claims); *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) (same for section 1983). Plaintiff concedes that the claims he asserts against the officers in Counts III, IV, VI and VII for violation of, and conspiracy to violate, his equal protection and lawful arrest rights, and the portion of Count VIII against the City that is based on that conduct, were filed more than two years after they accrued. (Pl.'s Mem. Resp. Opp'n Mot. Dismiss at 3, 6-9.) He contends, however, that the doctrine of equitable estoppel tolled the limitations period, making the claims timely. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990) (stating that tolling doctrines, including equitable estoppel, "stop the statute of limitations from running even if the accrual date has passed").

Defendants say there is no basis for applying equitable estoppel to those claims. That may be true, but the expiration of the statute of limitations is an affirmative defense.

4

*See* Fed. R. Civ. P. 8(c). Thus, it is an appropriate basis for dismissal under Rule 12(b)(6) only if plaintiff pleads facts that establish "an impenetrable defense." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses. Complaints need not contain *any* information about defenses and may not be dismissed for that omission."). Because plaintiff has not done so in this case, defendants' motions to dismiss Counts III, IV, VI, VII and the corresponding portion of Count VIII as untimely are denied.

That leaves the section 1983 due process and conspiracy claims that plaintiff asserts against the officers and the City in Counts II, V and VIII. Plaintiff contends that these claims are timely, even without tolling, because they did not accrue until the criminal charges against him were dismissed in 2006. Defendants, of course, disagree, arguing that these claims accrued when plaintiff was arrested in 2002.

Defendants say their argument is supported by *Wallace v. Kato*, in which the Supreme Court held that a false arrest claim accrued when the plaintiff was bound over for trial, not when he was subsequently released from custody. 127 S. Ct. 1091, 1096 (2007). In fact, *Wallace* is inapposite. As the Supreme Court noted, false arrest claims are a subset of false imprisonment claims, which are "subject to a distinctive [accrual] rule," that accrual begins "when the alleged false imprisonment ends." *Id.* 1095-96. That date, the Court said, is dictated by the very nature of the tort: "[F]alse imprisonment consists of detention without legal process," thus, once a plaintiff is detained *"pursuant to [legal] process,"* the false imprisonment ends. *Id.* at 1096. Because the tort is complete when the victim is held over for trial or arraigned, *i.e.*, jailed pursuant to lawful

5

process, the Court held that the limitations period starts to run on that day, not the day on which the victim is released from custody. *Id.*

Plaintiff alleges that defendants violated his due process rights, and conspired to do so, by withholding exculpatory evidence from him at trial. (Compl., Count II ¶¶ 22-23.) Such claims, unlike the false imprisonment claim in *Wallace*, accrue when the plaintiff knows or should know that his rights have been violated. *Kelly*, 4 F.3d at 511 (7th Cir. 1993). Because plaintiff alleges that defendants deprived him of a fair trial, the earliest he could possibly have known that his rights were violated is the first day of his trial.[4] Thus, defendants' contention that the limitations period began to run at the time of plaintiff's arrest is unpersuasive.

Morever, as noted above, even if defendants' accrual argument were sound, the untimeliness of plaintiff's claims would still not be a basis for Rule 12(b)(6) dismissal. Defendants' motions to dismiss Counts II and V and the corresponding portion of Count VIII are, therefore, denied.

Alternatively, defendants ask the Court to dismiss the due process claim in Count II, and the corresponding claim against the City in Count VIII, because they are insufficiently pleaded. To state a viable due process claim, plaintiff must allege that "(1) the government suppressed evidence; (2) the evidence was favorable to the defense, either because it was exculpatory or had impeachment value; and (3) the evidence was material to an issue at trial." *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005). Evidence was suppressed if the government failed to disclose it timely and it was not otherwise reasonably available to the defendant. *Id.* at 683. Unless the evidence is

---

[4]The Court does not decide when this claim actually accrued.

suppressed, *i.e.*, not revealed to plaintiff, who cannot otherwise discover it, the fabrication of inculpatory or withholding of exculpatory evidence is not a due process violation. *See Harris v. Kuba,* 486 F.3d 1010, 1016-17 (7th Cir. 2007).

Plaintiff alleges that: (1) he was standing in front of his home when the officers arrived and bystanders fled; (2) the officers went down a gangway and returned with a gun that was not plaintiff's and then asked plaintiff where the bystanders went; (3) when plaintiff said he did not know, the officers arrested him and charged him with aggravated unlawful use of a weapon; (4) subsequently, the officers "fabricated evidence that falsely indicated [plaintiff had] committed [that] crime . . . and withheld from the state's attorney and [plaintiff's] attorney evidence that would have exonerated [him]"; and (5) as a result, plaintiff was wrongfully convicted and imprisoned for more than three years. (Compl. ¶¶ 6-18; *see id.,* Count II ¶¶ 23- 24.) Defendants say those allegations establish that there was no suppression because plaintiff knew about the fabricated evidence, his possession of the gun, from the time of his arrest.

Certainly, one inference supported by plaintiff's allegations is that there was only one piece of fabricated evidence – plaintiff's possession of the gun. But there are others as well, *e.g.*, that the officers invented witness statements about which plaintiff did not learn until much later. Because the inference defendants draw from plaintiff's allegations is not the only reasonable one they support, the motions to dismiss Counts II, V and the corresponding portion of Count VIII for insufficient pleading are denied.

Alternatively, defendants contend that plaintiff's false imprisonment claims in Count VII and the corresponding portion of Count VIII must be dismissed because there are adequate state law remedies that preclude him from raising constitutional challenges

7

to his imprisonment. Defendants' argument is based on the line of cases starting with *Parratt v. Taylor*, in which the Supreme Court held that random and unauthorized deprivations of liberty or property do not violate the Fourteenth Amendment's due process clause unless there are inadequate post-deprivation state remedies. 451 U.S. 527, 543-44 (1981) (adopting doctrine in context of property deprivation), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *see Zinermon v. Burch*, 494 U.S. 113, 132, (1990) (stating that *Parratt* applies to deprivations of liberty).

The Court agrees, in part. Plaintiff's false imprisonment claims are governed by three different parts of the Constitution: "[T]he protections of the Fourth Amendment apply at arrest and through the . . . probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction." *Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006). *Parratt* and its progeny apply only to the due process claim. *See Zinermon*, 494 U.S. at 125-26. Because plaintiff cannot allege that a state law claim for false imprisonment is an inadequate remedy for the alleged false imprisonment he suffered after the probable cause hearing and before he was convicted, that claim must be dismissed.

However, the section 1983 claims challenging plaintiff's imprisonment between his arrest and the probable cause hearing and after he was convicted are grounded in the Fourth and Eighth Amendments, respectively, not the due process clause. *See Lopez*, 464 F.3d at 719. According to the Seventh Circuit, *Parratt* does not apply to claims based on the violation of substantive constitutional guarantees. *Guenther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir. 1984). *See McCullah v. Gadert*, 344 F.3d 655, 660 (7th Cir. 2003)

8

("*Parratt* has nothing to say about a Fourth Amendment claim."). Thus, the fact that there are "parallel remed[ies] under state law" does not defeat plaintiff's section 1983 false imprisonment claims grounded in the Fourth and Eighth Amendments.[5] *McCullah*, 344 F.3d at 660.

## State Claims

In Counts IX-XII, plaintiff asserts state tort claims against the officers and their employer, the City. Defendants contend that the false arrest and intentional infliction of emotional distress ("IIED") claims (Counts XI, XII and the corresponding portion of Count IX) are barred by the one-year statute of limitations that applies to them. *See* 745 Ill. Comp. Stat. 10/8-101(a) ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued."). Under Illinois law, a tort claim accrues "when all [of its] elements are present." *Brucker v. Mercola*, __ N.E.2d __, 2007 WL 4562876, at *21 (Ill. Dec. 28, 2007). Defendants say all of the elements of the false arrest and, to the extent it is based on that arrest, the IIED claim, were present on the day of plaintiff's arrest in 2002. Thus, they argue that the claims are untimely. Defendants' argument is unpersuasive for two reasons. First, plaintiff says his IIED claim is based on the alleged malicious prosecution (Resp. Mot. Dismiss at 11), and "courts in this district have consistently held that [such IIED] claims .

---

[5] Defendants also argue that any Eighth Amendment claim for wrongful post-conviction imprisonment must be dismissed because plaintiff has not specifically alleged that he was imprisoned after his conviction. (Officers' Mot. Dismiss at 13.) It is, however, reasonable to infer from plaintiff's allegations that he was sentenced to eight years in prison on November 4, 2003, his conviction was not vacated until December 2006, and he "spent over three years of his life incarcerated for a crime he did not commit" that he was imprisoned after his conviction. (Compl. ¶¶ 17-18.)

9

. . accrue only when state criminal proceedings are terminated." *Carroccia v. Anderson*, 249 F. Supp. 2d 1016, 1028 (N.D. Ill. 2003) (collecting cases). Second, plaintiff asserts that Illinois' version of equitable estoppel tolls the limitations period for these claims. *See Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006) (saying that state tolling doctrines apply to state law claims in federal court), *cert. denied*, 127 S. Ct. 1912 (2007). If that is true, which is not an issue the Court can resolve on a motion to dismiss, plaintiff's false arrest and IIED claims are timely.

Defendants also contend that the malicious prosecution claims, Count X and the corresponding portion of Count IX, are untimely because they accrued on March 31, 2005, when the Illinois Appellate Court reversed Thompson's conviction, not on December 5, 2006, when the State dismissed the charges against him. In defendants' view, the 2005 reversal was tantamount to a *nolle prosequi* order, and thus, it started the limitations clock on his malicious prosecution claims. *See Ferguson v. City of Chi.*, 820 N.E.2d 455, 459 (Ill. 2004) ("A cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor.").

The Court disagrees. "A *nolle prosequi* is a formal entry of record whereby the prosecuting attorney declares that he is unwilling to prosecute a case." *Id.* at 460. The appellate court's March 2005 order, which reversed plaintiff's conviction but authorized the State to try him again, is not akin to a *nolle prosequi*. Plaintiff was in jeopardy of being tried until December 5, 2006, when the State dismissed the charges against him. Thus, his malicious prosecution claims did not start to accrue until that date. *See*

*Ferguson*, 820 N.E.2d at 460 (stating that an order striking charges with leave to reinstate did not terminate the case).

Even if they are timely, defendants say the malicious prosecution claims must still be dismissed because they are insufficiently pled. To state viable claims, plaintiff must allege: "(1) the institution and prosecution of judicial proceedings by the defendant[s], (2) a lack of probable cause for those proceedings, (3) malice in instituting the proceedings, (4) a termination of the prior cause in the plaintiff's favor, and (5) suffering by the plaintiff of damage or injury from the prior proceeding." *Reed v. Doctor's Assocs., Inc.*, 824 N.E.2d 1198, 1205 (Ill. App. Ct. 2005); *see Joiner v. Benton Cmty. Bank*, 411 N.E.2d 229, 232 (Ill. 1980) (a favorable termination is one "indicative of the innocence of the accused"). Defendants say the following passage from the appellate court's order establishes that plaintiff cannot allege the favorable termination element:

> A factor that weighs heavily against the defendant is the overwhelming weight of the evidence against him. As mentioned above, the State's case was strong. Two police officers testified they saw defendant with a gun just a few feet away in broad daylight. Their stories were very similar. Defendant presented no evidence and relied on the theory that the police officers fabricated their story.

(Officers' Mot. Dismiss, Ex. A, *People v. Pearson*, No. 1-03-3550 (Ill. App. Ct. Mar. 31, 2005) at 13.)

Once again, the Court disagrees. The appellate court issued its decision in March 2005, based on the facts presented at trial. The State did not dismiss the charges against plaintiff until December 2006, more than eighteen months later. (Compl. ¶ 18.) Plaintiff does not say why the charges were dismissed, but given the lapse of time between the court's order and the dismissal of the charges, one reasonable inference is that a

11

substantial change in the facts prompted the dismissal. If so, the dismissal may indicate plaintiff's innocence, see *Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (1996), and satisfy the fourth element of his malicious prosecution claims. Defendants' motions to dismiss those claims are, therefore, denied.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part the City's motion to dismiss [doc. no. 42] and the officers' motion to dismiss [doc. no. 40]. The officers' motion is granted as to the RICO claim in Count I, which is dismissed without prejudice, and the section 1983 false imprisonment claim in Count VII for the period plaintiff was imprisoned after the probable cause determination and before he was convicted, which is dismissed with prejudice. The City's motion is granted as to the section 1983 false imprisonment claim in Count VIII for the same time period, which is also dismissed with prejudice. In all other respects, defendants' motions are denied. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend his complaint in accordance with this Order. If he fails to do so in that time, Count I will be dismissed with prejudice.

**SO ORDERED.**  ENTERED: 3/20/08

HON. RONALD A. GUZMAN
United States District Judge