IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRANCE THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 1130 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| CITY OF CHICAGO, CARL ) | |
| SUCHOCKI, TIM MCDERMOTT, ) | |
| and JOHN BURZINSKI, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Terrance Thompson ("Thompson") has sued Chicago police officers Carl Suchocki, Tim McDermott, John Burzinski ("the officers") and the City of Chicago pursuant to 42 U.S.C. § 1983 for violating, conspiring to violate and failing to prevent the violation of, his due process rights (Counts II, V, VI and VIII) and for maliciously prosecuting, falsely arresting and intentionally inflicting emotional distress on him (Counts IX-XII).[1] The case is before the Court on the parties' motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants in part and denies in part the defendants' motions and denies plaintiff's motion.

---

[1]Count I (RICO claim), which plaintiffs did not amend within the time for doing so, Count III (section 1983 equal protection claim), Count IV (section 1985 conspiracy to deprive of equal protection claim) and Count VII (section 1983 false imprisonment claim) have been dismissed. (*See* Mem. Opinion & Order of 3/20/08 at 12; Pl.'s Mem. Supp. Mot. Summ. J. & Opp'n Defs.' Mots. Summ. J. at 2 n.2.)

**Background**

On September 21, 2002, the officers, who were assigned to the Chicago Police Department's Special Operations Section ("SOS"), arrested plaintiff for unlawful aggravated use of a weapon. (Officers' Ex. D, General Offense Case Report.) Plaintiff says the charge was baseless, but he was convicted nonetheless. (Officers' Ex. K, Certified Statement Conviction/Disposition Pearson.[2]) McDermott and Suchocki were the only witnesses who testified for the State during the trial. (City's Ex. Q, Trial Tr. of 10/7/03.)

Three years later, after Suchocki and other SOS officers had been indicted and the investigations into SOS' activities became public, plaintiff successfully moved to have his conviction vacated. (Pl.'s Ex. 12, Certified Statement Conviction/Disposition Suchocki; Pl.'s Ex. 4, Pet. Relief J.; Pl.'s Ex. 6, Order of 12/5/06.) Thereafter, he filed this suit.

**Discussion**

To prevail on a summary judgment motion, "the pleadings, the discovery and disclosure materials on file, and any affidavits [must] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

---

[2]Terant Pearson is one of plaintiff's aliases. (Pl.'s Resp. Officers' LR 56.1(a) Stmt. ¶ 2.)

**The Federal Claims**

Defendants argue that the section 1983 claims for their alleged conspiracy to violate, failure to prevent the violation of and violation of plaintiff's due process rights, are untimely. All of these claims are based on the officers' alleged failure to disclose material exculpatory evidence to plaintiff. Because it is undisputed that the trial was held on October 7, 2003, defendants say that plaintiff's claims, which were not filed until February 2007, are untimely. *See Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) (per curiam) ("§ 1983 claims in Illinois are . . . governed by a two-year limitations period.")

Plaintiff does not quarrel with the time-line but contends that *Heck v. Humphrey* renders his claims timely. 512 U.S. 477, 486-87 (1994) (holding that a constitutional claim that would "render a conviction . . . invalid" cannot proceed until the conviction has been invalidated). The officers say *Wallace v. Kato*, 549 U.S. 384 (2007), not *Heck*, applies to plaintiff's claims and establishes that they are time-barred.

The Court agrees with plaintiff. The issue in *Wallace* was whether a section 1983 claim for false imprisonment accrues when the tort is complete, *i.e.*, "the victim becomes held pursuant to [legal] process," or as the *Heck* Court held with respect to section 1983 due process claims, when the conviction for the underlying crime is invalidated. 549 U.S. at 389-91 (emphasis omitted). The *Wallace* Court said it was the former:

> [T]he *Heck* rule for deferred accrual is called into play only when there exists a conviction or sentence that has not been invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn. . . .

> What petitioner seeks . . . is the adoption of a principle that goes well beyond *Heck*: that an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside.

*Id.* at 393 (quotation, citation and emphasis omitted).

*Wallace* has no application here. Plaintiff does not assert a section 1983 claim for false imprisonment, he asserts due process claims grounded in the officers' alleged acts and omissions during his criminal trial. Unlike the false imprisonment claim in *Wallace*, plaintiff's success on his due process claims would necessarily impugn his conviction. Consequently, they were not even cognizable under section 1983 until his conviction was invalidated. *See Heck*, 512 U.S. at 489 ("[A] prisoner . . . has no cause of action under § 1983 unless and until the conviction or sentence [on which it is based] is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.")

It is undisputed that plaintiff's conviction was reversed on March 31, 2005 and the charges against him were dropped on December 5, 2006, both of which occurred less than two years before he filed this suit on February 27, 2007. (Burzinski & McDermott's Resp. Pl.'s LR 56.1(a) Stmt. ¶¶ 14, 19-20; Suchocki's Resp. Pl.'s LR 56.1(a) Introductory Statement; Officers' Ex. Q, *People v. Pearson*, No. 1-03-3550 (Ill. App. Ct. Mar. 31, 2005).) His section 1983 claims are, therefore, timely.

Nonetheless, the officers say they are entitled to judgment on the due process claims because plaintiff has not raised a genuine fact issue as to whether they deprived him of a fair trial. They did so if they withheld from plaintiff material exculpatory or impeachment evidence that was otherwise not reasonably available to him. *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir. 2005). The favorable evidence plaintiff says the officers withheld from him was the fact that, at the time of his

4

arrest, they and their colleagues in SOS routinely committed crimes, falsified charges and fabricated evidence.

During their depositions, the officers were questioned extensively about whether they committed crimes when they were SOS officers, agreed with their co-defendants or others to do so, and witnessed or knew about crimes being committed by other SOS officers. In response to those questions, McDermott and Burzinski asserted their Fifth Amendment rights. (*See* Pl.'s Exs. Supp. Mot. Summ. J., Ex. 8, McDermott Dep. at 24-29, 36-38, 42-55, 63-80; *id.*, Ex. 10, Burzinski Dep. at 52-73, 90-100, 106-36, 138-98, 200-28, 235-50.) Suchocki asserted the Fifth Amendment in response to questions about his knowledge of other SOS officers' illegal activities but denied personal involvement in such activities. (*Id.*, Ex. 9, Suchocki Dep. at 6-18.) James Eldridge and John Blake, who were lieutenants in SOS when defendants worked there, also asserted the Fifth Amendment when they were questioned about their knowledge, disregard or encouragement of illegal activities by SOS officers. (*See generally* Pl.'s Ex. 26, Eldridge Dep.; Pl.'s Ex. 29, Blake Dep.) A witness' invocation of the Fifth Amendment in response to a question supports the inference that his answer to it would have been adverse to him. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("The rule that adverse inferences may be drawn from Fifth Amendment silence in civil proceedings has been widely recognized by the circuit courts of appeals, including our own . . . .").

Standing alone these inferences are not sufficient to support the entry of summary judgment, *id.* at 391, or "to create an issue of fact to avoid summary judgment." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 675 (5th Cir. 1999); *Avirgan v. Hull,* 932 F.2d 1572, 1580 (11th Cir. 1991) ("The negative inference, if any, to be drawn from the assertion of the fifth amendment does not substitute

5

for evidence needed to meet the burden of production."). They can, however, be considered in conjunction with other evidence in determining whether summary judgment is appropriate. *LaSalle Bank*, 54 F.3d at 391.

Among the other evidence in the record is plaintiff's testimony that he did not have a gun on the night he was arrested and that the officers' statements otherwise are false. (Pl.'s Ex. 3, Thompson Dep. at 94-114.) The record also contains a June 1999 memorandum issued by the SOS Commander setting forth the lunch break and uniform policies for SOS officers and telling them to "call [their] Sergeant so the 2 of you can practice your stories together," if a police inspector questions them about their compliance with the policies. (Pl.'s Ex. 23, Mem. from Darling to Watch Commanders of 6/25/99.) The Commander also says in the memo, "I will back you if your [sic] right or wrong doing police work but not when your [sic] stupid." (*Id.*) A second 1999 memorandum from the SOS Commander says that a "Standard Operating Procedure[]" is that "[o]fficers who are in the bottom ten (10) percent for activity" three times in a ten-month period "will be returned to a district assignment." (Pl.'s Ex. 22, Mem. from Darling to All Personnel of 9/21/99).

The record also contains the 2000 Resolution of Alderman Beavers, Chairman of the City Council's Committee on Police and Fire, requiring the City's police contract negotiators to appear at a public hearing to "take input into the negotiation process." (Pl.'s Ex. 25, Beavers Resolution.) Such input was necessary, the Resolution says, because the FOP/City contract that expired in June 1999 "makes it very difficult, if not impossible for the . . . Department to exercise its basic responsibility for holding employees accountable for their behavior" by: (1) requiring the Department to discard disciplinary findings of "Sustained-Violation Noted, No Disciplinary Action"

6

after one year; (2) requiring "more serious allegations and findings of misconduct . . . [to be] removed from [an officer's] file after 5 years"; (3) barring the Department from investigating "[c]omplaints or allegations of misconduct that occurred 5 years" before the Department became aware of them unless the Superintendent directs otherwise; (4) prohibiting the Department from investigating anonymous complaints unless they allege criminal acts; and (5) prohibiting the Department from offering inducements to officers to provide information relating to incidents under investigation. (*Id.*)

With one exception, each of these provisions appear, verbatim, in the FOP/City contract that was executed after Beavers' Resolution. (*See* FOP/City Contract effective 7/1/99 through 6/30/03, Sections 6.1(D), (E), (G), 8.4), *available at*, http://www.chicagofop.org/Contract/Contract_99-03.pdf.[3]) The single exception is the retention policy for disciplinary records, which was revised to state that such records:

> [W]ill be destroyed five (5) years after the date of the incident or the date upon which the violation is discovered, whichever is longer, except those pertaining to CRs alleging criminal conduct or excessive force that were not sustained, which will be retained for seven (7) years . . . .
>
> Any information of an adverse employment nature which may be contained in any unfounded, exonerated, or otherwise not sustained file, shall not be used against the officer in any future proceedings. Information contained in files alleging excessive force or criminal conduct which are not sustained may be used in future disciplinary proceedings to determine credibility and notice.

(*Id.* Section 8.4.) Moreover, Department records show that in 2001 and 2002, when the 1999-2003 contract was in force, it investigated a total of 2,555 complaints of civil rights violations – and

---

[3] The City submitted an excerpt from this contract as Ex. L.

sustained only twenty-two of them. (City Ex. C, Excerpt Chicago Police Department 2002 Annual Report.)

This evidence does not establish that defendants violated plaintiff's due process rights. However, coupled with the adverse inferences from Suchocki, McDermott, Burzinski, Eldridge and Blake's silence, it does create a genuine issue of fact as to whether: (1) the officers withheld, and conspired to withhold, material exculpatory or impeaching evidence from plaintiff; (2) there was a widespread practice of unconstitutional conduct by SOS officers when plaintiff was arrested in 2002; and (3) the City condoned, encouraged or turned a blind eye to that practice. Therefore, the Court denies all of the motions for summary judgment on the due process claims.

**State Claims**

The officers contend that they are entitled to judgment on plaintiff's false arrest claim because it is time-barred. Plaintiff says he alleges false imprisonment, not false arrest, and that false imprisonment claims do not accrue under Illinois law until the imprisonment ends.

Plaintiff does not cite, and the Court could not find, any Illinois case that supports his view of false imprisonment claim accrual. There are two district court cases that do, *Cooper v. Butler*, No. 92 C 5604, 1995 WL 399009, at *5 (N.D. Ill. June 29, 1995) (stating that the limitations period for state false imprisonment claims does not start to run until the imprisonment ends) & *Hernandez v. Sheahan*, No. 93 C 1668, 1993 WL 257486, at *6 (N.D. Ill. July 8, 1993) (same), but their reasoning has been rejected by others. *See, e.g., Pierce v. Pawelski*, No. 98 C 3337, 2000 WL 1847778, at *2 (N.D. Ill. Dec. 14, 2000) (holding that state false imprisonment claim accrues when the imprisonment starts), *Burge v. Harvey Police Officers*, No. 97 C 4569, 1997 WL 610045, at *2

(N.D. Ill. Sept. 25, 1997) (same) & *Gora v. Edgar*, No. 95 C 4087, 1996 WL 11938, at *2 (N.D. Ill. Jan. 10, 1996) (same). The Court finds the latter cases, which reflect the general principles of tort claim accrual set forth by the Illinois Supreme Court, *see Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85-88 (Ill. 2003), to be more persuasive. Because it is undisputed that the alleged false imprisonment/arrest began on September 21, 2002 (Burzinski & McDermott's Resp. Pl.'s LR 56.1(a) Stmt. ¶ 1; Suchocki Resp. Pl.'s LR 56.1(a) ¶ 1), more than four years before plaintiff filed this suit, his claim is time-barred. 745 Ill. Comp. Stat. 10/8-101 ("No civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued.").

To prevail on his malicious prosecution claim, plaintiff must establish, among other things, that the officers lacked probable cause to start or continue the criminal proceedings against him. *Reed v. Doctor's Assocs., Inc.,* 824 N.E.2d 1198, 1205 (Ill. App. Ct. 2005). The officers had probable cause if the facts known to them at the time "would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Howard v. Firmand*, 880 N.E.2d 1139, 1142 (Ill. App. Ct. 2007). The officers say plaintiff's deposition testimony, in which he admits that he regularly bought and used illegal drugs in September 2002, establishes that they had probable cause to prosecute him.

The Court disagrees. It is undisputed that plaintiff was prosecuted for unlawful aggravated use of a weapon, *i.e.*, "possess[ing] . . . any pistol, revolver, stun gun . . . taser or other firearm," 745 Ill. Comp. Stat. 5/24-1.7(a), not a drug crime. Whether the officers had probable cause to start or participate in plaintiff's prosecution for that offense depends on what they knew at the time. *Id.* The

9

officers asserted the Fifth Amendment when they were asked what they knew at the relevant time, giving rise to the inference that their answers would have been adverse to them.[4] *LaSalle*, 54 F.3d at 390. The only other evidence on this issue comes from plaintiff, who testified that he did not have a gun on the day he was arrested. (Pl.'s Ex. 3, Thompson Dep. at 94-114.) However, he also testified that he is a drug addict, has been convicted of numerous felonies and routinely uses aliases when he interacts with the police. (*Id.* at 9-12, 53-63, 890-94, 98, 131-36, 153-57, 166-67, 172-76, 185-92.) Given this testimony and the lack of independent evidence to corroborate it, the record does not establish that the officers lacked probable cause but creates a factual dispute for trial on that issue. Thus, none of the parties is entitled to judgment as a matter of law on this claim.[5]

The same is true for the intentional infliction of emotional ("IIED") distress claim. To prevail on this claim plaintiff must prove, among other things, that the officers' conduct was outrageous. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (setting forth IIED claim elements). Because the propriety of the officers' conduct is in dispute, the parties are not entitled to judgment on the IIED claim.

---

[4]Defendants say McDermott and Suchocki's invocation of the Fifth Amendment makes them unavailable to testify in this suit and, thus, their testimony from the criminal trial is admissible under Federal Rule of Evidence 804. Unavailability is not, however, the only condition that Rule 804 places on admissibility of prior testimony. Defendants must also show that plaintiff "had an opportunity [in the criminal trial] . . . to develop the [officers'] testimony by direct, cross, or redirect examination." *Id.* In other words, defendants must show that plaintiff's due process claim is baseless to make their prior testimony admissible in this suit. As discussed above, defendants have not made that showing. Thus, McDermott and Suchocki's prior testimony is inadmissible.

[5]In light of this finding, the Court need not address the parties' arguments with respect to the other elements of this claim.

## Conclusion

For the reasons set forth above, the Court denies as moot the City's motion to strike exhibit 13 [doc. nos. 200 & 208] and grants plaintiff's motion to strike [doc. no. 204] with respect to defendants' replies in support of their LR 56.1(a) Statements but otherwise denies it. There is no genuine issue of material fact as to plaintiff's state false arrest/imprisonment claim, and defendants are entitled to judgment as a matter of law on it. Therefore, the Court grants defendants' motions for summary judgment on that claim [doc. nos. 154 & 164] but otherwise denies them. The Court denies plaintiff's motion for summary judgment as well. The federal claims and malicious prosecution and IIED claims against all defendants must be tried.

**SO ORDERED.**    **ENTERED:**

**March 12, 2009**

*/s/ Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**